IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JAY FOLSE,**

       **Plaintiff,**

v.                                                                                           Case No.: 3:22-cv-00415

**CITY OF HUNTINGTON,**
**a municipal corporation, et al.,**

       **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

    Plaintiff, Jay Folse, filed a complaint against Defendants, the City of Huntington and various officials and employees, alleging that they violated his rights by demolishing structures on three of his properties without adequate notice, that they negligently caused him financial harm, and that they filed a fraudulent lien for demolition costs. (ECF No. 1). Pending before the Court is Defendants' Motion to Dismiss. (ECF No. 8). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT**, in part, and **DENY**, in part, Defendants' Motion to Dismiss, (ECF No. 8); **DISMISS** Count III and Count IV of Plaintiff's Complaint, (ECF No. 1), and permit the parties to conduct discovery on the two remaining counts.

1

I.      **Relevant Facts**

On September 5, 2019, Folse purchased three properties at a tax sale in Huntington, West Virginia, making him a tax sale certificate purchaser with the option to acquire the tax deeds at a later date. (ECF No. 1 at 3, 6); W. Va. Code § 11A-3-1, *et seq*. The three properties, consisting of residential homes on small plots of land, were located at 934 27th Street, 610 5th Avenue (Guyandotte), and 2119 11th Avenue in Huntington. (ECF No. 1 at 3). According to Defendants, at the time of purchase, all three homes had been condemned as "unsafe, dangerous, or detrimental to the public welfare" and were ordered for demolition by the city's Unsafe Buildings Commission. (ECF Nos. 8-1, 8-2, 8-3). The 11th Avenue property was ordered for demolition on August 14, 2014; the 27th Street property on July 12, 2018; and the 5th Avenue property on August 8, 2019. (*Id.*). Each order was entered the same month as the decision, and, with the exception of the 11th Avenue property, the demolition orders were promptly filed with the Cabell County Clerk's Office. (ECF No. 11). The three homes were demolished within several months of the tax sale, with the last demolition occurring on February 5, 2020. (*Id.*). In summary, the Commission ordered the demolitions before the tax sale, and the demolitions were executed after the tax sale, at which point Folse had the tax sale certificates, but not the deeds to the properties.

Folse's complaint states, and the Defendants do not currently contest, that Folse was not given notice of the demolition orders. (ECF Nos. 1, 8). Folse claims that he was not aware of the demolitions until he visited the properties in person on July 12, 2021, one year and five months after the last demolition. (ECF No. 1 at 4). That same day, he emailed the mayor and city attorney of Huntington about the demolitions. (*Id.*). The city attorney responded a few days later, citing the relevant notice statute for property

2

demolitions and asserting that the statute did not require that notice be given to a tax sale certificate purchaser or a lienholder. (ECF Nos. 1 at 4, 8 at 2–3). On September 16, 2022, the city filed a lien against the 11th Avenue property for the cost of demolishing the home there, amounting to $17,000. (ECF Nos. 1 at 9, 8 at 3). Folse filed this lawsuit twelve days later on September 28, 2022. (ECF No. 1).

In his complaint, Folse asserts four counts—two under 42 U.S.C. § 1983 and two state-based claims. First, he alleges that, as tax lien purchaser, he had a sufficient property interest in the three homes to warrant notice prior to the demolitions; therefore, Defendants' failure to provide him such notice violated his right to due process under the Fourteenth Amendment to the United States Constitution. (ECF No. 1 at 5-6). Second, Folse asserts a municipal liability claim against the City of Huntington pursuant to *Monell* on the basis that its policy of providing demolition notices to property owners only, rather than to all individuals with an interest in the property, was "in clear violation of the takings clause and due process clause of the fourteenth amendment." (*Id.* at 7-8). Next, Folse claims that Defendants negligently caused him to suffer economic damages by failing to notify him of the planned demolitions. Folse states that he intended to repair and sell the houses and, had he known of the demolition orders, he could have applied for injunctive relief in the Circuit Court or requested relief from the buildings commission. (*Id.* at 8). Lastly, Folse states a cause of action for a violation of West Virginia Code § 38-16-501, which prohibits the filing of a fraudulent lien. (*Id.* at 9). He alleges that the City's attorney and mayor prepared, signed, and caused to be recorded a fraudulent lien against the 11th avenue property for the costs related to the demolition of the structure on that property. Folse requests this Court to award him money damages, declaratory relief that the Defendants' actions were unconstitutional, and injunctive relief releasing him from

the lien. (*Id.* at 10).

Defendants move to dismiss the complaint for failure to state a claim in accordance with Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8). In their motion, Defendants argue that Folse's claims are barred by the applicable two-year statute of limitations and that Defendants are immune from suit under West Virginia law. (ECF No. 8 at 2). Folse filed a memorandum in opposition to the motion to dismiss, (ECF No. 10), and Defendants filed a reply, (ECF No. 12), with an affidavit of the city's public works director verifying the date of each demolition order, as well as the dates of demolition. (ECF No. 11).

## II. Standard of Review

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that, to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). When considering the motion, the court must assume that the facts alleged in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). If after doing so, the court finds the complaint lacking in "enough facts to state a claim to relief that is plausible on its face," the complaint cannot survive the motion to dismiss. *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Generally, in resolving a motion to dismiss, the court is limited to the well-pleaded

allegations of the complaint itself, any documents attached as exhibits, and those incorporated into the complaint by reference. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). Nevertheless, there are some exceptions to this rule. Courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. Furthermore, Courts may consider documents attached to a 12(b)(6) motion, without converting it to a motion for summary judgment, "when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n. 1 (7th Cir. 2021). Finally, a court may consider matters of which the court can take judicial notice. Fed. R. Civ. P. 12(c). *Golden Corral Corp. v. Illinois Union Insurance Company*, 559 F. Supp.3d 476, 482 (E.D.N.C. 2021) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007)).

Courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Even under this less stringent standard, however, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  Discussion

Defendants raise two grounds for dismissal, including statutory immunity and the

statute of limitations. The undersigned addresses each, starting with the latter.

### A. *Statute of Limitations*

Defendants argue that Folse's complaint is barred by the applicable two-year statute of limitations. (ECF No. 8 at 2). The undersigned notes, however, such an argument seldom succeeds at this stage of the litigation. As the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") explains in *Goodman v. Praxair, Inc.*:

> Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant. It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense clearly appear *on the face of the complaint.*

*Goodman,* 494 F.3d 458, 464 (4th Cir. 2007) (internal markings and citations omitted). Consistent with *Goodman*, the undersigned examines each count of the complaint below to determine the appropriate statute of limitations and examine whether all facts necessary to support the bar raised by Defendants appear *on the face of the complaint.*

#### 1. Counts I and II

Counts I and II of the Complaint assert due process and *Monell* claims brought pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal markings omitted). "Because § 1983

does not contain its own statute of limitations, federal courts apply the forum state's most analogous statute of limitations, generally the limitations period applicable to personal injury actions." *Howell v. Cnty. Comm'n of Hampshire Cnty.*, No. 21-1023, 2022 WL 61428, at *1 (4th Cir. Jan. 6, 2022) (citing *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014)). Here, the applicable statute of limitations is two years. W. Va. Code § 55-2-12 ("Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years after the right to bring the same shall have accrued, if it be for damage to property . . . "). Since Folse filed this action on September 28, 2022, he may only bring due process and *Monell* claims which accrued on or after September 28, 2020.

Although the court applies the state statute of limitations, the accrual date of a § 1983 cause of action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Fourth Circuit has held that the date of accrual in a § 1983 case is when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). Folse alleges in the complaint that he was not aware of the demolitions until July 12, 2021, (ECF No. 1 at 4), and argues that the statute of limitations began to run on the day he discovered that the structures had been demolished. (ECF No. 10 at 4). Even accepting Folse's factual allegations as true, the statute of limitations may have been triggered before July 12, 2021, because the claim accrues not only when the plaintiff actually knows of his injury, but also when "he is put on notice—e.g., by the knowledge of the fact of injury and who caused it—to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Id.* Put simply, the claim accrues when the plaintiff should have, by an exercise of due diligence, discovered the injury. *Blanck v.*

*McKeen*, 707 F.2d 817, 819 (4th Cir. 1983).

Reviewing the factual allegations and first two counts of the complaint, the undersigned **FINDS** that all of the facts necessary to assess the issue are not present in the four corners of the complaint; thus, this case is not one of the "relatively rare circumstances" in which the statute of limitations bar is clear on the face of the complaint. While Defendants have offered exhibits which may ultimately be useful in resolving the date on which the cause of action accrued, the Court is not at liberty to consider those exhibits at this time and must allow the parties further evidentiary development before it can conduct a merits review of Defendants' affirmative defense.

### 2. Counts III and IV

In Count III, Folse asserts a claim of negligence under West Virginia law. To determine whether an action is time-barred under West Virginia law, the Supreme Court of Appeals of West Virginia ("WVSC") has outlined a five-step analysis that courts should follow:

> First, the court should identify the applicable statute of limitation for [the] cause of action. Second, the court ... should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.... Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255, 258 (W. Va. 2009). In West Virginia, unless otherwise prescribed, a personal injury claim for damage to property is governed by the

two-year limitations period set forth in W. Va. Code § 55-2-12.

Here, Folse describes the elements of his cause of action as the failure of the defendants to provide him with proper notice of the demolition orders before demolishing the three structures on the properties he purchased. The demolition orders were issued no later than August 9, 2019, and the buildings were demolished no later than February 5, 2020. However, under West Virginia law, tort causes of action are governed by the "discovery rule." *Casto v. Dupuy,* 515 S.E.2d 364, 368 (W. Va. 1999). Under the discovery rule "the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury. Syl. Pt. 4, *Gaither v. City Hospital Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). "[W]hether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." Syl. pt. 4, Dunn, 689 S.E.2d at 258.

In this case, it is not clear from the four corners of the complaint when Folse should have been aware of the demolition orders. Similarly, there simply is not enough information in the complaint to complete the final two steps of the analysis. Therefore, the undersigned **FINDS** that it is premature to dismiss Count III based upon the statute of limitations bar, and the parties must further develop the evidence before the Court can conduct a merits review of the issue.

As to Count IV, the undersigned notes that the state statute relied upon by Folse

does not provide an applicable limitations period for the filing of claims. Nevertheless, according to the complaint, Folse filed his lawsuit a mere twelve days after the lien was filed by Defendants Williams and Damron. Accordingly, on its face, the undersigned **FINDS** that there is insufficient evidence to support dismissal of Count IV based on the statute of limitations bar.

### B. *Immunity Under West Virginia Code § 29-12A-5*

Defendants contend that they are entitled to immunity in accordance with W. Va. Code § 29-12A-5, part of the Governmental Tort Claims and Insurance Reform Act ("the Tort Claims Act"). (ECF No. 8 at 4-8); W. Va. Code § 29-12A-1, *et seq*. The Torts Claim Act expressly limits the liability of political subdivisions and their employees for "injury, death, or losses to persons or property" allegedly caused by acts or omissions of the political subdivision or employees under certain circumstances enumerated in the Act. As the WVSC explains:

> West Virginia Code § 29-12A-5(a) provides that a political subdivision is immune from liability if a loss or claim results from any one of seventeen events, conditions, acts, or omissions, such as a riot, insurrection or rebellion, natural conditions of unimproved property of the political subdivision, and the adoption or failure to adopt a law. Viewed in the inverse, a political subdivision may be liable for injury caused by the negligence of its employees when acting in the scope of their employment under § 29-12A-4(c) unless the political subdivision is immunized from liability for that loss or claim as provided in § 29-12A-5(a).

*Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 381 (W. Va. 2022) (internal markings omitted). Similarly, an employee of a political subdivision is immune from liability under the Torts Claim Act unless: "(1) [the employee's] acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [the employee's] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of" West Virginia

law. W. Va. Code § 29-12A-5(b).

### 1. Counts I and II

Although the Tort Claims Act grants immunity to political subdivisions and their employees in a wide array of civil actions, the statute explicitly declines to provide immunity in "civil claims based on alleged violations of the [C]onstitution or statutes of the United States." W. Va. Code § 29-12A-18(e). Therefore, the undersigned **FINDS** that Defendants are not immune from Folse's due process and *Monell* claims asserted in Counts I and II of the complaint. *See Schoonover v. Clay Cnty. Sheriff's Dep't*, No. 2:19-CV-00386, 2020 WL 2573243, at *6 (S.D.W. Va. May 21, 2020) (finding that a county commission could not claim immunity against plaintiff's constitutional claims, in accordance with § 29-12A-18(e)); *Davis v. Milton Police Dep't*, No. CV 3:20-0036, 2020 WL 2341238, at *5, n.6 (S.D.W. Va. May 11, 2020) (explaining that, under § 29-12A-18, defendants were immune from state law claims but not federal constitutional claims).

### 2. Count III

Count III alleges that the defendants were negligent by demolishing the homes without giving Folse prior notice and due process. Defendants argue that the City of Huntington is immune from liability under the exception found in W. Va. Code § 29-12A-5(a)(4), which protects political subdivisions from a loss or claim resulting from the adoption or failure to adopt a law, including, but not limited to, any statute, charter, provision, ordinance, resolution, rule, regulation or written policy. (ECF No. 8 at 5). Defendants further argue that the individual defendants are immune from liability pursuant to W. Va. Code § 29-12A-5(b), which protects employees of a political subdivision from claims or losses unless they acted outside the scope of their employment or official responsibilities; acted with malice, in bad faith, or recklessly; or are expressly

11

liable by West Virginia statutory law. The undersigned agrees with Defendants and **FINDS** that Defendants are immune from liability for the claims asserted in Count III, and this Count should be dismissed.

In essence, Folse takes issue with the City of Huntington's ordinance, which is based on a West Virginia statute, governing the condemnation and demolition of unsafe and hazardous structures. Because the ordinance does not call for the City to provide notice of demolition orders to tax lien certificate purchasers and lienholders, Folse claims he did not receive the notice he believes he was entitled to receive under the Due Process Clause of the United States Constitution. His claim very clearly implicates the City's adoption of the ordinance, or its failure to adopt an ordinance, policies, or regulations that would have provided him with notice of scheduled demolitions before they were initiated. Therefore, the City of Huntington, as a political subdivision, is immune from liability from this negligence claim.

The remaining defendants, all of whom are employees and officials of the City of Huntington, are likewise entitled to immunity against the claim asserted in Count III based upon the allegations made in the complaint. Folse makes no assertion that any of the individuals acted outside the scope of his or her official responsibilities or employment duties. Although he includes an allegation that the Defendants acted in a "reckless and intentionally malicious manner," that allegation is entirely conclusory and devoid of any evidentiary support. He provides no explanation for this allegation and no factual enhancement. Therefore, the Court need not accept the allegation as a well-pleaded fact entitled to the assumption of truth. *Ashcroft,* 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Finally,

there is no statutory law that the individuals have been accused of violating. Accordingly, these defendants are similarly immune from liability pursuant to the Torts Claim Act.

### 3. Count IV

Count IV involves a lien on the 11th Avenue property prepared, signed, and filed by Defendants Damron and Williams in the amount of the demolition costs on that property. Defendants argue that the City of Huntington is immune from liability for this claim as it seeks damages arising from alleged intentional and malicious acts of city employees. The undersigned agrees. The law is well settled that political subdivisions are immune under the Tort Claims Act from losses or claims related to the intentional, malicious, or reckless acts or omissions of their employees. *State ex rel. Grant Cnty. Comm'n v. Nelson*, 856 S.E.2d 608, 619 (W. Va. 2021) (quoting *Zirkle v. Elkins Rd Pub. Svc. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007)) ("[W]hile political subdivisions may be liable for certain claims for negligence, 'claims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code § 29-12A-4(b)(1).'"). Therefore, the undersigned **FINDS** that Count IV should be dismissed against the City of Huntington.

Defendants additionally argue that Count IV should be dismissed against the remaining defendants because Folse fails to include any factual allegations supporting his claim of a "malicious" and "fraudulent" lien. (ECF No. 8 at 7). Certainly, Folse includes no factual allegations at all regarding the code enforcement officers, the City of Huntington City Council Members, or the members of the Unsafe Buildings Commission of the City of Huntington concerning this cause of action. As such, the undersigned **FINDS** that Count IV should be dismissed against these defendants for failure to state a claim.

Finally, Folse alleges in the complaint that Defendant Damron prepared the lien, Defendant Williams signed it, and Damron recorded it, although they knew Folse did not own the property when the home was demolished. (ECF No. 1 at 9). He further claims that the lien was done with the intent to harass, aggravate, and annoy him. (*Id.*). Public officials and employees do not enjoy the immunity provided by the Tort Claims Act when they act with malicious purpose or in bad faith. *See Reeves v. Meddings,* No. 21-2391, 2022 WL 17091862, at *5 (4th Cir. Nov. 21, 2022) (citing W. Va. Code § 29-12A-5(b)(2)). However, Damron and Williams are not in need of immunity, because the well-pleaded allegations in the complaint, when taken as true and construed in the light most favorable to Folse, are insufficient to state a plausible claim under W. Va. Code § 38-16-501.

> To impose liability for recording a fraudulent lien, a claimant must demonstrate that the alleged person or party had the following:
>
> (1) Knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2) Intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution of laws or this state or the United States, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
>
> (3) Intent to cause another person to suffer:
>     (A) Physical Injury;
>     (B) Financial Injury; or
>     (C) Mental anguish or emotional distress.

*Lemartec Corp. v. Berkley Cty. Solid Waste Authority,* No.: 3:18-CV-22, 2020 WL 3405755, at *3 (N.D.W. Va. Jun. 19, 2020).

In order to satisfy the elements of this claim, Folse must include factual allegations showing that Defendants Damron and Williams knew that the information they used to create the lien was materially false; that they intended this information to be relied upon

14

when the lien was recorded; that they intended for the lien to have the effect of a valid lien, and that they intended to harm Folse by filing the lien. Syl. pt. 1, in part, *Lengyel v. Lint*, 280 S.E.2d 66 (W. Va. 1981). Yet, Folse has not included any factual statements in the complaint demonstrating that the lien is fraudulent, or that Defendants Damron and Williams knew the lien was fraudulent when they recorded it. West Virginia Code § 8-12-16(g)(1) authorizes a municipality to file a lien against real property for amounts that reflect all costs incurred by the municipality related to demolishing a structure on that real property; Folse does not state any allegations suggesting that Defendants Damron and Williams violated or otherwise circumvented this statute. He does not deny that a demolition occurred on the 11th Avenue property, nor does he challenge the accuracy or amount of the lien. He does not allege the absence of a demolition order, or any irregularity on the part of Damron or Williams in collecting the information that formed the basis of the lien. Folse seems to imply that the lien is fraudulent because he was not the owner of the property when the lien was recorded. However, the lien follows the property, not the owner; as such, it is irrelevant that Folse did not have full title to the property when the demolition was executed. W. Va. Code § 8-12-16(g)(1) ("The governing body of every municipality […] may file a lien *against the real property*[.]") (emphasis added). While Folse may believe the lien is unfair, there is no apparent legal basis to argue that it is fraudulent.

Folse's complaint also lacks sufficient factual allegations to support other aspects of his claim. Regarding the Defendants' specific intent to harm him, Folse states in his complaint that they acted "with the intent to harass, aggravate, and annoy the Plaintiff," with no further factual enhancement for this assertion. (ECF No. 1 at 9). This amounts to a bare recitation of the elements of a fraudulent lien claim—precisely the kind of

allegations meant to be dismissed under the modern pleadings standard introduced by *Iqbal* and *Twombly*. Accordingly, the undersigned **FINDS** that Count IV of the Complaint fails to state a plausible claim against Damron and Williams and should also be dismissed against them.

## IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge accept the foregoing findings of fact and **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 8), be **GRANTED**, in part, and **DENIED**, in part; Count III and Count IV of Plaintiff's Complaint, (ECF No. 1), be **DISMISSED**; and the parties proceed to conduct discovery on the two remaining counts.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727

F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff and counsel of record.

**FILED:** March 8, 2023

_____
Cheryl A. Eifert
United States Magistrate Judge