**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JAY FOLSE,**

      **Plaintiff,**

**v.**                                    **Case No.: 3:22-cv-00415**

**CITY OF HUNTINGTON,
a municipal corporation, et al.,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Jay Folse, filed this action against Defendants, the City of Huntington and various officials and employees, concerning the demolition of structures on three separate properties. (ECF No. 1). Pending before the Court is Defendants' Motion for Summary Judgment. (ECF No. 30). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT**, in part, and **DENY**, in part, Defendants' Motion for Summary Judgment, (ECF No. 30).

## I.    Relevant History

On September 5, 2019, Folse purchased three properties at a tax sale in Huntington, West Virginia. (ECF No. 1 at 3, 6). The three properties, consisting of

residential homes on small plots of land, were located at 934 27th Street, 610 5th Avenue (Guyandotte), and 2119 11th Avenue in Huntington. (ECF No. 1 at 3). All three homes had previously been condemned and ordered for demolition: the 11th Avenue property was ordered for demolition in August 2014, the 27th Street property in July 2018, and the 5th Avenue property in August 2019. (ECF No. 31 at 3–4). The demolition orders for the 27th Street and 5th Avenue properties were promptly filed with the Cabell County Clerk's Office, but the demolition order for the 11th Avenue property was not filed. (ECF No. 31 at 18). The three homes were all demolished within several months after the tax sale, before Folse acquired the deeds to the properties. (ECF No. 31 at 3–4). The last demolition occurred on February 5, 2020. (*Id*. at 4). Because Folse did not yet own the properties, he was not entitled to notice of the demolitions under the City's ordinances or state law. Folse subsequently acquired the deeds to each property, in February and June of 2020. (ECF Nos. 30-6, 30-7, 30-8). Folse claims he was not aware of the demolitions until July 12, 2021, when he personally visited the properties. (ECF No. 1 at 4).

Folse filed the instant lawsuit on September 28, 2022. (ECF No. 1). His complaint included a Fourteenth Amendment Due Process Clause claim, a Fifth Amendment Takings claim, and two state law claims. Defendants filed a motion to dismiss, arguing that Folse's claims were barred by the applicable two-year statute of limitations and that Defendants were immune from suit under West Virginia law. (ECF No. 8). The undersigned issued Proposed Findings and Recommendations, finding that Folse's state law claims were meritless, but that his federal claims were not defeated by state law immunities and could not be dismissed as time-barred on a motion to dismiss, because the statute of limitations defense was not apparent from the face of the complaint. (ECF

No. 13). The Court adopted the undersigned's Proposed Findings and Recommendations and dismissed the state law claims. (ECF No. 26). Following the Court's order, Defendants filed answers to the complaint, and the parties conducted discovery. (ECF Nos. 21–25, 27–29).

On November 17, 2023, Defendants filed the instant motion for summary judgment and an accompanying memorandum of law. (ECF Nos. 30, 31). Defendants attached to their motion the following documents: the demolition orders for each of the three properties, (ECF Nos. 30-1, 30-3, 30-4); an affidavit of Mark Bates, the Public Works Director for the City of Huntington, attesting to the dates the demolition orders were entered, filed, and recorded, (ECF No. 30-2); excerpts from Defendants' deposition of Folse, (ECF No. 30-5); the tax deeds, redemption notice forms, and redemption notices for each of the three properties, (ECF Nos. 30-6, 30-7, 30-8); excerpts from Folse's deposition of Scott Damron, (ECF No. 30-9); and a quitclaim deed, dated July 26, 2021, transferring ownership of the three properties to Anonymous Houses, LLC. (ECF No. 30-10).

In their motion for summary judgment, Defendants argue that Folse is not entitled to relief on the merits. First, Defendants contend that Folse's Takings Clause claim must fail, because the three properties at issue were public nuisances, and the government need not provide any compensation when it diminishes or destroys the value of property by abating a public nuisance. (ECF No. 31 at 8). Second, Defendants address the viability of a due process claim. Defendants assert that there is no procedural due process violation, because Folse cannot demonstrate a "valid property interest" at the time the demolitions were completed. (*Id.* at 10). Folse was not yet the owner of the properties, and, under West Virginia law, only an owner is entitled to notice of a pending

demolition. (*Id.* at 10). Defendants also argue that Folse has not demonstrated a substantive due process violation, because such a claim requires a showing that the defendants' behavior "shocks the conscience", and Folse has made no such showing. Third, Defendants posit that Folse's claims against the City must fail, because he has not shown any constitutional deprivation caused by a policy, practice, or custom of the City, as would be required to establish *Monell* liability. (*Id.* at 15–16). Finally, in addition to their arguments addressing the merits, Defendants assert that Folse's claims are barred by the applicable two-year statute of limitations. (*Id.* at 17–19). Folse did not file a response to Defendants' motion for summary judgment and did not contradict Defendants' factual statements; therefore, the Court presumes that no material facts are in dispute. On December 15, 2023, Defendants submitted notice to the Court that the parties' final settlement negotiation was unsuccessful. (ECF No. 33).

## II.    <u>Standard of Review</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, ***and*** the moving party is entitled to judgment as a matter of law. *Lyons v. City of Alexandria*, 35 F.4th 285 (4th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 501 U.S. at 248. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The court

must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden on the moving party; it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Gary v. Facebook, Inc.*, 822 Fed. Appx. 175, 179 (4th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

However, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may satisfy its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this is done, the burden shifts to the nonmoving party to identify specific facts that establish the existence of a genuine issue of material fact. *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1356 (10th Cir. 1994) (citation omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. (citations omitted).

## III.    Discussion

### A.  Due Process Violations and Monell Liability

Folse contends that, as tax-sale certificate purchaser, he was entitled to notice of the demolitions as a matter of due process. (ECF No. 1 at 5–6). Defendants interpret Folse's claim as one of both substantive and procedural due process and address the merits of both in their supporting memorandum. (ECF No. 31 at 9–15). Folse does mention substantive due process in his complaint, (ECF No. 1 at 5), but, given that the complaint focuses almost entirely on lack of notice, and he does not invoke any substantive right, the undersigned interprets Folse's complaint as asserting only a claim of procedural due process. *See Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 145–46 (4th Cir. 2014) ("Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness. [... P]rocedural due process requires fair notice of impending state action and an opportunity to be heard").

At any rate, Folse does not establish a substantive due process claim. To state such a claim, Folse is required to show that (1) he had property or a property interest; (2) the defendants deprived him of this property or property interest; and (3) the defendants' action "falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cnty*., 48 F.3d 810, 827 (4th Cir. 1995). Because a municipality's demolition of property determined to be a public nuisance cannot be "characterized as arbitrary, or conscience shocking, in a constitutional sense," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998), the undersigned **FINDS** that Folse fails to state a substantive due process claim. *See Trobough v. City of Martinsburg*, 120 F.3d 262, 1997 WL 425688, at *3 (4th Cir. Jul.

6

30, 1997). Folse offers no specific factual allegations or evidence to establish that the demolition orders and subsequent demolitions were unjustified, abusive, or oppressive.[1] *See Madar v. City of Philadelphia,* No. 19-6033, 2021 WL 2156362, at *6-7 (E.D. Pa. May 27, 2021).

With respect to procedural due process, Defendants' primary argument for summary judgment is that there was no violation, because Folse, as a non-owner, was not entitled under state law to notice of the proposed demolitions. This fact is simply irrelevant to the constitutional issue at hand. Due process is not measured by compliance with state law or local ordinance. *See Leftwich v. Bevilacqua*, 635 F. Supp. 238, 241 (W.D. Va. 1986) ("The procedures to which plaintiff is entitled are delineated by the Due Process Clause, not [state] regulations or statutes."); *Strozier v. City of Lanett,* No. 3:17-CV-853-WKW, 2019 WL 1212088, at *1 (M.D. Ala., Mar. 14, 2019) ("Notice requirements in a state statute are not necessarily synonymous with those of due process."); *Moreland Properties, LLC v. City of Thornton*, 559 F. Supp.2d 1133, 1158 (D. Colo. 2008) ("However, these arguments are a red herring; the question raised in a procedural due process challenge is whether the level of process afforded to the [plaintiffs] passed constitutional muster, not whether [the state agency] followed statutes or regulations.") Due process is a constitutional guarantee independent of state law, *see Fluharty v. City of Clarksburg*, No. 1:14CV27, 2017 WL 125033, at *5 (N.D.W. Va., Jan. 12, 2017), *aff'd*, 707 Fed. Appx. 791 (4th Cir. 2018) ("The Constitution does not

---

[1]Folse does claim in the complaint that the demolished homes "were in reparable condition and had significant value," but he also states that he does not recall visiting the properties until ***after*** the homes were already demolished; thus, he never actually inspected them and could have no personal knowledge of their condition. (ECF No. 1 at 4, ECF No. 30-5 at 7). He produces no evidence of their condition or their value. Folse provides no other support to refute Defendants' assertion that the structures were unsafe and required demolition. As Folse carries the burden of proof on the elements of a substantive due process violation, his complete lack of evidence justifies summary judgment on that issue.

guarantee compliance with state law, but rather provides for a baseline of procedural safeguards prior to property deprivation."), and, frequently, state laws must be amended to comport with due process. The elements of a procedural due process claim are well-established: to state a procedural due process claim, a plaintiff must show that he was deprived of a constitutionally cognizable life, liberty, or property interest by some form of government action, and that the procedures employed were constitutionally inadequate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).

First, it must be determined whether Folse had a protected property interest. A protected property interest exists where a person has a legitimate claim of entitlement stemming from an independent source of law. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also A Helping Hand, LLC v. Baltimore Cnty., MD*, 515 F.3d 356, 370 (4th Cir. 2008) ("We look to state law to determine whether [plaintiff] had a cognizable property interest that could trigger federal due process guarantees."). The class of property interests protected by procedural due process "extend[s] well beyond actual ownership of real estate, chattels, or money." *Roth*, 408 U.S. at 572. Folse had purchased the tax-sale certificates for the three properties. A tax-sale certificate purchaser's interest in the tax-delinquent property is recognized by the West Virginia statutes which were in effect at the time, as this interest could be transferred through assignment or inheritance. W. Va. Code § 11A-3-19 (repealed 2022). A tax-sale certificate purchaser will acquire the deed to the property the following year unless the property is redeemed, the purchaser fails to give proper notice to those with the right to redeem, or the purchaser fails to request the deed from the State Auditor. W. Va. Code § 11A-3-19. In *State v. King,* the Supreme Court of Appeals of West Virginia recognized that tax-lien purchasers have a protectable interest in the properties subject to the liens. 35 S.E. 30,

36 (W. Va. 1900). In a concurring opinion, Justice Dent explained:

> The inchoate title of these claimants until the payment of the arrearage taxes is superior to the forfeited title, and may become absolute. To permit … an illegal redemption to stand as valid would be to deprive these junior claimants of their possessory rights without due process of law. They have no right to object to the redemption of the land, but they have the right to object to its redemption in an illegal manner.

*Id.*; *see also Scranton v. Wheeler,* 179 U.S. 141, 170 (1900) ('The term 'property,' as applied to lands, comprehends every species of title, inchoate or complete. It is supposed to embrace those rights which lie in contract, those which are executory, as well as those which are executed.") (citation omitted). Although Folse was not the owner, he had a future interest in the properties. Therefore, the undersigned **FINDS** that Folse had a protected interest in the properties at the time of the demolitions.

Second, the undersigned **FINDS** that Folse suffered a deprivation of this interest by government action—Folse's interest in the properties was appreciably affected by the demolitions, as the property values, and thus, the values of the tax-sale certificates, were diminished. Defendants cite *Sansotta*, 724 F.3d at 538 for the proposition that there is no deprivation of property rights—and, accordingly, no procedural due process violation—where a municipality acts to enforce its nuisance ordinances. (ECF No. 31 at 14–15). However, *Sansotta* is not applicable for two reasons: first, the facts confronting the Fourth Circuit in *Sansotta* are materially distinguishable from the case at bar, and, second, Defendants' interpretation of *Sansotta* would obliterate the very concept of procedural due process.

In *Sansotta*, owners of beachfront cottages in Nags Head, North Carolina brought suit after the town declared their cottages to be public nuisances. The cottages were located directly on the beach, seaward side of the town's vegetation line. A storm in 2009

washed away a connecting road and much of the sand from around the cottages, resulting in exposure of their septic tanks and other damage. The area surrounding the cottages was barricaded, and the owners were not permitted to access or repair the cottages. Indeed, the owners were told that the only way to abate the nuisance created by the damaged cottages was to demolish them. While the suit was pending, the town obtained permission from the Army Corps of Engineers to undertake a massive beach renourishment project, which resulted in 200 feet of new beach in front of the cottages. Based on the beach renourishment, the town withdrew part of its nuisance declaration and invited the owners to apply for permits to repair the cottages. The Fourth Circuit held that, although the town had previously limited the owners' ability to use and enjoy the cottages, "that limitation was not a deprivation of any property right," because the owners had no right under state law to use their property in a manner which posed a likelihood of personal or property damage. *Sansotta*, 742 F.3d at 541. Importantly, the town did not demolish the cottages in *Sansotta;* consequently, the owners had not suffered a permanent deprivation of their cottages. *Sansotta v. Town of Nags Head*, 863 F. Supp. 2d 495, 509 (E.D.N.C. 2012), *aff'd in part, rev'd in part*, 724 F.3d 533 (4th Cir. 2013). The Fourth Circuit had to consider whether the nuisance order itself, which temporarily limited access to the cottages, but without further enforcement by demolition, constituted a deprivation of any property right. The Fourth Circuit's conclusion—that the nuisance orders did not deprive owners of their property rights—is inapplicable to Folse's suit, as there is no question that demolition amounts to a deprivation of property. *Id.*; *also see Stozier,* 2019 WL 1212088, at *5 ("When the City demolished the structure on Plaintiff's property, the City deprived Plaintiff of his property.") (citation omitted).

Nevertheless, Defendants read *Sansotta* to mean that there are no procedural due process implications where the government takes *any* action to abate a public nuisance. (ECF No. 31 at 15). Defendants even go so far as to state that Folse would not have had an interest in the properties sufficient to trigger due process protections *if he were the fee simple owner*, because the structures were public nuisances. (*Id.*). That argument circumvents due process. By Defendants' logic, once the City has determined a structure to be a public nuisance, *no one* may claim a valid property right in the structure, and no one would be entitled to prior notice of its destruction. This is the very kind of unchecked power that the Due Process Clause prohibits. *See Helton v. Hunt,* 330 F.3d 242, 247 (4th Cir. 2003) ("The due process clause operates to protect the 'use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property.'") (citing *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972)). Even when there is no factual dispute that a structure is unsafe and requires demolition, procedural due process allows someone in Folse's position to take "whatever defensive measures seemed appropriate, including refusing to buy the house, or persuading the [City] to rescind its order or delay execution of it." *Kornblum v. St. Louis Cnty., Mo.*, 72 F.3d 661, 664 (8th Cir. 1995). By ignoring due process, the City deprives the party-in-interest of the opportunity to abate the nuisance by repairing the structure or demolishing it himself. The protections of procedural due process are most vital when governments are making case-by-case adjudications like those made in condemnation proceedings. Defendants' argument—that public nuisances carry no due process protections—is incompatible with the principle of due process. It is only *after* due process has been afforded that the government may act to abate a public nuisance—*Sansotta* did not hold otherwise.

Folse meets the first two elements of a procedural due process claim, and the last procedural due process inquiry requires the Court to determine whether the process provided was constitutionally adequate. Procedural due process entitles one to "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "Failure to give notice violates 'the most rudimentary demands of due process of law.'" *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (citing *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965)). "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance," but actual notice is not necessarily required. *Mullane*, 339 U.S. at 314 (internal citations omitted). "This reasonableness inquiry relies heavily on the circumstances of the case." *First Floor Living LLC v. City of Cleveland*, 584 F. Supp. 3d 476, 485–86 (N.D. Ohio 2022), *aff'd sub nom.* 83 F.4th 445 (6th Cir. 2023).

When the 27th Street and 5th Avenue properties were ordered demolished in July 2018 and August 2019, local ordinances required that the demolition order was (1) personally served upon the owner, (2) conspicuously posted to the subject property, and (3) filed with the Cabell County Clerk's Office within 15 days. HUNTINGTON, W. VA. CODE OF ORDINANCES §§ 1739.10, 1739.12 (2017).[2] Consistent with this requirement, the demolition orders for the 27th Street and 5th Avenue properties were filed with the Cabell County Clerk's Office. (ECF No. 30-2). The 11th Avenue property was ordered for

---

[2] https://library.municode.com/wv/huntington/ordinances/code_of_ordinances?nodeId=855974.
Online ordinance archives only date back to ordinances adopted in 2015, but § 1739.04 was unchanged from August 2014 until September 2017.

demolition a number of years earlier, in 2014. Local ordinances from that period only required the order be (1) personally served upon the owner and (2) conspicuously posted to the affected property. HUNTINGTON, W. VA. CODE OF ORDINANCES § 1739.04 (2014). The demolition order for the 11th Avenue property was not filed with the Cabell County Clerk's Office, (ECF No. 31 at 18), and local ordinance did not require demolition orders to be filed with the clerk's office until September 2017. There is no evidence in the record on whether notice was posted conspicuously to any of the three properties.

Nonetheless, the undersigned **FINDS** that the City provided adequate notice of the demolitions regarding the 27th Street and 5th Avenue properties by filing the orders with the Cabell County Clerk's Office. Folse's status as a tax-sale certificate purchaser is relevant here. West Virginia law places the burden on tax-sale purchasers to supply the property owner with notice of the tax sale. To provide this notice, tax-sale purchasers are expected to conduct a title search of the subject property and provide the State Auditor with the address of the property owner. *See* W. Va. Code § 11A-3-52 (eff. June 11. 2010 to June 4, 2020); *O'Neal v. Wisen*, No. 5:16-CV-08597, 2018 WL 3341786, at *1 (S.D.W. Va., July 6, 2018); *Simpson v. Edmiston*, 23 W. Va. 675, 680 (1884). Therefore, filing the demolition notices for the 27th Street and 5th Avenue properties placed Folse—and any other potential purchaser—on record notice of the planned demolitions. Folse claims he did not receive actual notice, but this is irrelevant to the due process inquiry. *See Jones v. Flowers*, 547 U.S. 220, 226 (2006) ("Due process does not require that a property owner receive actual notice before the government may take his property."). All that is required is notice "reasonably calculated" to inform interested parties of the pending action. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The City could not be expected to personally serve or mail notice to Folse, as

13

he had no interest in the properties at the time the demolitions were ordered. The City denies knowledge of the tax sale until after the demolitions were completed, and Folse provides no contradictory evidence. *See Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962) (stating that personal notice is required where a person's name and address is easily ascertainable, but such notice is impossible where a person's identity is unknown); (ECF No. 31 at 13). By filing the demolition orders with the Cabell County Clerk's Office, the City took steps which were reasonably calculated to apprise Folse of the future demolitions. This satisfies the requirements of the Due Process Clause. *Ellis v. City of Montgomery,* 460 F. Supp. 2d 1301, 1306-07 (M.D. Ala. 2006) ("For instance, the city could itself record, in the probate office, notice of the pending demolition proceedings. That way, any subsequent purchaser of the property would be on notice that demolition could occur."). In sum, the undersigned **FINDS** that Defendants are entitled to summary judgment with respect to Folse's procedural due process claims regarding the demolitions on the 5th Avenue and 27th Street properties.

As to the 11th Avenue property, the undersigned **FINDS** that Defendants have not demonstrated as a matter of law that their process was adequate. *See, e.g., Sams v. City of Milwaukee, Wis.,* 117 F.3d 991, 993–94 (7th Cir.1997) ("Whether a particular method of notice is reasonable depends on the particular circumstances."). In *Kornblum*, the Eighth Circuit considered a procedural due process claim brought by a property owner whose home was demolished without notice shortly after purchase. 72 F.3d 661 (8th Cir. 1995). The facts in *Kornblum* were similar to the present case. St. Louis County ordered the home to be demolished but failed to publicly record the demolition order, and when the property was sold, the new owner had no knowledge of the impending demolition. The Eighth Circuit held that future purchasers are entitled

to some form of notice of demolition orders, and the County's decision to notify only the current owners, without creating any public record that could be revealed through a title search, was unreasonable. *Id.,* at 663–64. In considering what form of notice *would* be reasonable, the court held that notice published in local newspapers or conspicuously posted to the property itself were likely insufficient to notify future purchasers. *Id.* at 664. The court determined that the county should have recorded the demolition order, such that future purchasers would be alerted to its existence when performing a title search. The *Kornblum* court noted that the county's six-month delay in demolishing the home contributed to the unreasonableness of the notice: "the County [...] created a foreseeable and appreciable risk that its actions would affect a set of interested parties different from those whose interests were affected when the house was declared a nuisance." 72 F.3d at 664.

In the instant case, the City's delay was nearly six *years*. The Commission decided to demolish the 11th Avenue property in August 2014 but did not actually do so until February 5, 2020.[3] (ECF No. 30-2). As in *Kornblum*, this delay created a considerable risk that the set of interested parties affected by the demolition—and thus, the class of parties entitled to notice—would be different from when the order was first entered. City ordinances in effect in 2014 only required notice be given to the landowner and posted conspicuously to the affected property. Clearly, notice served only on the owner would not apprise any future purchasers of the pending demolition. It remains unknown whether the City posted any physical notice to the 11th Avenue property. But, even assuming the City did conspicuously post notice on the property when the demolition

---

[3] The delay is particularly egregious considering that Folse acquired the deed to the property only one week later, on February 12. (ECF No. 30-6).

order was entered in August 2014, the City's extraordinary delay in completing the demolition would have rendered this notice ineffective. It is almost certain that the notice would have disappeared—become lost, invisible, or illegible—before the tax sale more than five years later, in September 2019. And no future purchaser, including Folse, would have had any way of knowing that the property was set to be demolished. This cannot satisfy due process.

It is worth noting that at least one other federal court has considered what notice is due to a tax-sale purchaser when the tax-delinquent property is demolished after sale but before the purchaser acquires title. In *Madar v. City of Philadelphia*, the District Court for the Eastern District of Pennsylvania was confronted by a factual scenario almost identical to Folse's case. Madar purchased a property at a tax sale with the intention of renovating it, the building on the property had previously been condemned and ordered for demolition, and the building was demolished after the tax sale but before Madar acquired title. 2021 WL 2156362, at *1. Madar did not receive actual prior notice of the demolition. Philadelphia's notice procedures at the time involved sending notice to the owner's address of record, posting notice on the building itself, and *searching tax sale records to determine if the property had been sold. Id.* at *10. The Eastern District of Pennsylvania determined that these procedures were sufficient to satisfy due process, as they were reasonably calculated to inform interested parties, including tax-sale purchasers, of the pending demolition.[4] *Id.* at *11.

Unlike in *Madar*, Defendants have not offered evidence that the City of Huntington took any steps which were reasonably calculated to inform future

---

[4] Notably, the Court did *not* decide that Madar's interest in the properties, as a tax-sale purchaser, was insufficient to trigger due process protections. Instead, the Court proceeded to evaluate whether the process was adequate, and determined it was.

purchasers or tax-sale purchasers of the pending demolition at 2119 11th Avenue. Defendants did not record the demolition order at the time it was entered, and there is no indication that the City searched the tax sale records before commencing demolition, or took any other action to apprise non-owner interested parties of the demolition. Instead, the record suggests that Defendants merely sent notice to the current owner and then waited five and a half years to act on the order. Further, Defendants' failure to provide notice to Folse appears to be the result of the City's ordinances in effect at the time, and not from mere negligence on the part of an employee, so Defendants have not demonstrated that the City is immune from liability under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). *See Ellis,* 460 F. Supp.2d at 1312. Defendants have not shown that they are entitled to judgment as a matter of law regarding the 11th Avenue property. Accordingly, the undersigned **FINDS** that Defendants are not entitled to summary judgment on Folse's procedural due process claim regarding the demolition at the 11th Avenue property, and on the related *Monell* claim against the City.

### B. Takings Claims

Folse also claims that the demolitions constituted uncompensated takings, in violation of the Fifth Amendment's Takings Clause. (ECF No. 1 at 6–7). The Takings Clause, made applicable to the States through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 637 (2023). "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). "However, a government does not run afoul of the Clause when it exercises its police power to abate a public nuisance, since 'all property in this country is held under the implied obligation

that the owner's use of it shall not be injurious to the community.'" *Cordts v. Griffis*, No. 18-13017, 2020 WL 1274966, at *6 (E.D. Mich. Mar. 16, 2020) (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) (quoting *Mugler v. Kansas,* 123 U.S. 623, 665 (1887)).

Defendants argue that, because the structures were a public nuisance, the demolitions were not takings which required compensation. (ECF No. 31 at 8). Courts have consistently held that there is no unconstitutional taking where the state destroys property which posed a public nuisance. *See Mugler*, 123 U.S. at  669 ("The exercise of the police power by the destruction of property which is itself a public nuisance […] is very different from taking property for public use."); *Embassy Realty Invs., Inc. v. City of Cleveland*, 572 Fed. Appx. 339, 344 (6th Cir. 2014) ("Compensation is not mandated when the state legitimately exercises police power to abate a property nuisance."); *In re 106 N. Walnut, LLC*, 447 Fed. Appx. 305, 309 (3d Cir. 2011) ("[A] municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property.").

The evidence of record includes three demolition orders entered by the Unsafe Buildings Commission of the City of Huntington, Cabell and Wayne Counties, West Virginia—which apply to 934 27th Street, 610 5th Avenue, and 2119 11th Avenue—as well as the affidavit of Mark Bates, Public Works Director for the City of Huntington. (ECF Nos.30-1, 30-2, 30-3, 30-4). The demolition orders confirm that notice was given to the property owners prior to a hearing on each property, and each property was found to contain an unsafe structure that was "dangerous or detrimental to the public welfare and should be demolished." (*Id*.). The orders were to be served on the property owners and

posted in a conspicuous place on the premises.

Other than a conclusory allegation in the complaint that the demolished structures "were in reparable condition and had significant value," Folse does not challenge the validity of the demolition orders, or the propriety of the hearings or findings. Folse's conclusory allegation fails to create a genuine issue of material fact, because (1) the allegation is vague and factually unsupported; (2) testimony by Folse directly contradicts the conclusory allegation; he testified that he could not recall whether he even visited the properties prior to the structures being demolished; and (3) Folse failed to respond to the motion for summary judgment and identify facts demonstrating the condition of the structures, despite being advised of his obligation to do so.

"There is a presumption of regularity in the performance by a public official of his public duty." *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1368 (4th Cir. 1975). The presumption of regularity "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Almy v. Sebelius*, 679 F.3d 297, 309 (4th Cir. 2012) (quoting *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926)). Given this presumption, and in the absence of any evidence to the contrary, the undersigned accepts the findings of the Unsafe Buildings Commission, which were never appealed or challenged, as correct, and **FINDS** that the three structures were dangerous and in need of demolition. *See Crow v. City of Springfield, Ohio,* 15 Fed. Appx. 219, 224 (6th Cir. 2001) (holding that the question of whether property constituted a public nuisance was fully and finally litigated when owner failed to avail himself of the right of appeal, rendering the administrative finding that the property was a public nuisance to be "an

19

established legal fact") (citing *University of Tennessee v. Elliott*, 478 U.S. 788 (1986). Therefore, as the three structures on Folse's properties were public nuisances, the undersigned **FINDS** that no "taking" occurred, no compensation is due, and Defendants are entitled to summary judgment on Folse's takings claims.

### C. Statute of Limitations

Defendants also argue that they are entitled to summary judgment because Folse's claims are barred by the statute of limitations. (ECF Nos. 30 at 2, 31 at 17). Folse's claims arise under 42 U.S.C. § 1983, which does not contain its own statute of limitations. Rather, § 1983 claims borrow from the forum state's analogous statute of limitations. *Fayemi v. Offerman*, 99 Fed. Appx. 480, 481 (4th Cir. June 2, 2004) (citing *Owens v. Okure*, 488 U.S. 235 (1989)). Here, the applicable statute of limitations is two years. W. Va. Code § 55-2-12. Since Folse filed this action on September 28, 2022, he may only bring claims which accrued on or after September 28, 2020.

Though the statute of limitations is derived from state law, the accrual date for the cause of action—the date on which the statute begins to run—is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[T]he statute of limitations does not begin to run until the plaintiff discovers, or by the exercise of due diligence should have discovered, the facts forming the basis of his cause of action." *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983). This occurs when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Defendants argue that Folse's claims accrued when the City undertook code enforcement activities—either when the demolition orders were entered, or when the demolitions themselves were completed. (ECF No. 31 at 18–19). Defendants cite

*Fluharty*, 2017 WL 125033, at *7, claiming that *Fluharty* "enumerated a clear threshold for a 42 U.S.C. § 1983 claim related to the accrual of claims arising out of the demolitions of property: the claim accrues when 'code enforcement' activity, such as the entering of demolition orders, occurs." (*Id.* at 19). Defendants' interpretation of *Fluharty* is unpersuasive. In *Fluharty*, the plaintiffs brought a procedural due process claim against the city of Clarksburg for the demolitions of several properties. The plaintiffs had knowledge of and participated in the process of previous code enforcement actions against the properties, but they only brought suit after the demolitions were completed. The court determined that the action was time-barred, because, although the demolitions took place within the statute of limitations, the alleged procedural due process violations occurred, and the plaintiffs had reason to know of the violations, well before the demolitions. *Fluharty*, 2017 WL 125033, at *7 ("They cannot complain in 2014 about the sufficiency of procedures they were provided in 2010, even if demolition or lien imposition occurred later."). The *Fluharty* court did not state that § 1983 claims related to demolitions accrue at the time of the code enforcement activity; it only decided that, under the specific facts of that case, the plaintiffs' claims were time-barred.

In determining the accrual date for a statute of limitations, a court must look to the specific constitutional right implicated by plaintiff's complaint. *See McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019). Folse's complaint contains two distinct types of claims: a procedural due process claim and a takings claims. The accrual dates for the takings claims are fairly simple: a takings claim accrues when the plaintiff knows or should have known about the taking, *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 887 (4th Cir. 2023), which means Folse's takings claims accrued when he knew or should have known about the demolitions. Ultimately, Folse's procedural due

process claim accrued at the same time. A procedural due process violation occurs, not with the deprivation of property, but with the failure to provide due process, and a procedural due process claim accrues when the plaintiff knows or should have known about the failure to provide due process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Folse's procedural due process claim lies with the City's failure to provide prior notice of the demolitions. Because the City theoretically could have provided notice at any point before the demolitions, the due process violation—Folse's injury—occurred more or less simultaneously with the demolition of the structures. Therefore, both Folse's procedural due process and takings claims accrued when Folse discovered or should have discovered the demolitions.

It is undisputed that Folse only had actual knowledge of the demolitions as of July 12, 2021, well within the statute of limitations. However, if Folse *should have* discovered the demolitions before September 28, 2020, then his claims are barred as untimely. Based on the undersigned's findings, the only demolition that remains at issue is the one that occurred at 2110 11th Avenue. The question for the Court to consider, then, is whether, as a matter of law, Folse exercised due diligence, although he may not have visited the property until July 2021—two years after the tax liens were purchased and more than a year after the demolition occurred. The undersigned cannot answer that question on the limited record before the Court, as it remains unknown if, and why, Folse failed to visit the property until July 2021. *Cf. Pulliam v. City of Calumet*, 2018 WL 844421 (N.D. Ill., Feb. 12, 2018) (finding one-month delay in discovery of demolition was reasonable where plaintiff was seriously ill and recovering from surgery in another city); *Swinson v. City of Philadelphia*, No. CV 13-6870, 2015 WL 4975077, at *3 (E.D. Pa., Aug. 19, 2015) (finding two-year delay in discovery of demolition was

reasonable where plaintiff was incarcerated); *Bruce v. City of Miamisburg*, No. 3:21-CV-80, 2023 WL 184010, at *4 (S.D. Ohio, Jan. 13, 2023), *aff'd*, No. 23-3080, 2023 WL 6623194 (6th Cir., Oct. 11, 2023) (finding eight-month delay in discovery of demolition was unreasonable where plaintiff had 46 years' experience in property ownership, owned 50 properties nationwide, and could have had an agent visit the properties on his behalf). Moreover, assuming Folse had visited the 11th Avenue property before the demolition, the record contains no evidence indicating that the demolition order was conspicuously posted, giving Folse some notice of the City's planned nuisance abatement. As the record is silent as to the circumstances surrounding Folse's visit to the property or discovery of the demolition, the undersigned cannot determine whether Folse's claims are time-barred. Accordingly, the undersigned **FINDS** that Defendants are not entitled to summary judgment on the statute of limitations defense.

### D. Claims Against Unnamed Individual Defendants

In his complaint, Folse named as Defendants several unidentified individuals: John Doe Code Enforcement Officers 1-5, Individual Members of the City of Huntington City Council, and Individual Members of the Unsafe Buildings Commission. (ECF No. 1 at 1). As the undersigned noted in the previous Proposed Findings & Recommendations, Folse made no factual allegations specific to any of these individuals. (ECF No. 13 at 13). The Court dismissed the state law claims against these defendants but did not explicitly dismiss them from the action. (*See* ECF No. 26). These individual defendants then joined the instant motion for summary judgment, though they were never identified or served. (ECF No. 30 at 1). Because Folse made no specific factual allegations against these individual defendants in his complaint, did not amend his complaint to identify the individuals by name and  include allegations against them, and did not serve them

with process as required by Fed. R. Civ. P. 4(m), the undersigned **FINDS** that John Doe Code Enforcement Officers 1-5, Individual Members of the City of Huntington City Council, and Individual Members of the Unsafe Buildings Commission should be dismissed.

Defendants did not raise this argument for dismissal in their motion or memorandum of law, (see ECF Nos. 30, 31), but a court may grant summary judgment on a ground not raised by a party, after giving the parties notice and an opportunity to respond. F. R. Civ. P. 56(f)(2). This Proposed Findings and Recommendations, and its standard 14-day period for both parties to file objections, constitutes sufficient notice and opportunity to respond for purposes of Rule 56(f). *See Watson v. McPhatter*, No. 1:17CV934, 2020 WL 3436102, at *9 n.11 (M.D.N.C., June 23, 2020), *report and recommendation adopted,* No. 1:17CV934, 2020 WL 4664697 (M.D.N.C., July 30, 2020) (stating that a federal magistrate judge's proposed findings and recommendations satisfied the notice-and-response requirements of Rule 56(f)).

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that Defendants' Motion for Summary Judgement, (ECF No. 30), be **GRANTED**, in part, and **DENIED**, in part, as follows:

1.  **GRANTED**, with respect to any substantive due process claim;

2.  **GRANTED**, with respect to Folse's procedural due process claims for the demolitions at the 5th Avenue and 27th Street properties;

3.  **DENIED**, with respect to Folse's procedural due process claim for the demolition at the 11th Avenue property. This claim should proceed to trial;

4. **DENIED**, with respect to Folse's *Monell* claim against the City based upon the procedural due process claim for the demolition at the 11th Avenue property. This claim should proceed to trial;

5. **GRANTED**, with respect to Folse's claims that the demolitions at all three properties violated the Fifth Amendment's Takings Clause;

6. **GRANTED**, on *sua sponte* review, with respect to Folse's claims against John Doe Code Enforcement Officers 1-5, Individual Members of the City of Huntington City Council, and Individual Members of the Unsafe Buildings Commission.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing

party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff and counsel of record.

**FILED:** March 5, 2024

Cheryl A. Eifert
United States Magistrate Judge